# The Inhabitants of DEERFIELD *versus* PLINY ARMS.

Where an island is so formed in the bed of a river not- navigable, as to divide the channel and lie partly on each side of the thread of the river, it will be divided between the riparian proprietors on the opposite sides of the river according to the original thread of the river.

Land formed by alluvion in a river is, in general, to be divided among the several riparian proprietors entitled to it, according to the following rule : Measure the whole extent of their ancient line on the river and ascertain how many feet each proprietor owned on this line; divide the newly formed river line into equal parts, and appropriate to each proprietor as many of these parts as he owned feet on the old line; and then draw lines from the points at which the proprietors respectively bounded on the old, to the points thus determined as the points of division on the newly formed shore.

This rule is to be modified under particular circumstances; for instance, if the ancient margin has deep indentations or sharp projections, the general available line on the river ought to be taken, and not the actual length of the margin as thus elongated by the indentations or projections.

WRIT of entry to recover a parcel of land containing about five acres, recently formed by alluvial deposits on the margin and bed of Deerfield river. The land lies and has been formed in a bend of the river curving southerly and easterly from the river. The case was tried before *Shaw* C. J.

The demandants claimed the land in question, as owners of the land on the east bank of the river, at the time of the accretion. The tenant claimed to hold it as an accretion to his own land lying higher up on the southerly and easterly side of the bend of the river.

One question reserved for the opinion of the whole Court, was, whether the demandants had proved their title to the land on the east bank of the river, in virtue of which title alone they could claim the accretion. This depended almost exclusively on the early records of the proprietors of the township of Deerfield, and the town and the parish surveys, grants and other documents.

The tenant contended, that supposing the demandants' title to the land on the east bank to be established, still it would not entitle them to any part of the alluvial formation, because he maintained that he and those under whom he claimed, had been in possession of some part of the alluvial formation for

4 *

near sixty years ; and that as it commenced making on the southwesterly side, it had never reached the east bank of the river, and therefore it could not be said to be an accretion to it.   It was testified that between the eastern bank of the river and the alluvial land in controversy, there is a low place into which a small brook falls ; and that often there is water in it, but that sometimes it is dry.

If the Court should be of opinion that the demandants were entitled to recover any part of the land in controversy, the amount and proportion to which they were entitled was to be determined by an assessor or commissioners, conformably to such rules as the Court should establish.

*Sept. 23d, 1834.*

*Alvord*, for the demandants, cited to the point, that if the land in controversy had been an island, formed by alluvion, the demandants would have had a title to the portion opposite their land, as far as the thread of the river, Justin. Inst. 2. 1. 22 ; 10 Bartoli Opera, 140 ; 3 Touillier, Le Droit Civil Français, 107 ; Moreau and Carlton's Partidas, 344 ; *Hatch v. Dwight*, 17 Mass. R. 298, 299 ; *Tyler v. Wilkinson*, 4 Mason, 400 ; 2 Bl. Com. 262, Chitty's note 6 ; *Storer v. Freeman*, 6 Mass. R. 438 ; and as to the mode of dividing alluvion land among several riparian proprietors, 10 Bartoli Opera, 136 ; 2 Collection de Nouvelles Decisions, par Denisart, *tit. Attérissement ; Rust v. Boston Mill Corp.* 6 Pick. 167.

*Wells*, on the same side.

*Billings*, R. E. *Newcomb* and H. G. *Newcomb*, for the tenant.

*Sept 22d, 1835.*

SHAW C. J. delivered the opinion of the Court.    There are several points in this cause to which it seems proper to allude in the outset, and upon which we entertain no doubt.

In the first place it seems very clearly settled that, upon all rivers not navigable, (and all rivers are to be deemed not navigable above where the sea ebbs and flows,) the owner of land adjoining the river, is *primâ facie* owner of the soil to the central line, or thread of the river, subject to an easement for the public to pass along and over it with boats, rafts and river craft.    This presumption will prevail, in all cases, in favor of the riparian proprietor, unless controlled by some

express words of description which exclude the bed of the river, and bound the grantee on the bank or margin of the river. In all cases, therefore, where the river itself is used as a boundary, the law will expound the grant as extending *ad filum medium aquœ.*

We also consider it as a well settled principle of law resulting in part from the former, that where land is formed by alluvion, in a river not navigable, by slow and imperceptible accretion, it is the property of the owner of the adjoining land, who for convenience, and by a single term, may be called the riparian proprietor. And in applying this principle, it is quite immaterial whether this alluvion forms at or against the shore, so as to cause an extension of the shore or bank of the river, or whether it forms in the bed of the river and becomes an island. And where an island is so formed in the bed of the river, as to divide the channel and form partly on each side of the thread of the river, if the land on the opposite sides of the river belong to different proprietors, the island will be divided according to the original thread of the river, between the rival proprietors.

This view of the subject disposes of one of the questions of fact, in relation to which some evidence was given ; namely, whether the alluvial formation in controversy was separated by water, from the eastern bank of the river, claimed by the demandants as riparian proprietors, or whether the newly formed land, at that point, extends quite to the eastern bank. We think this fact entirely immaterial to the rights in controversy between these parties.

But by far the most difficult question in this cause, is, whether the demandants have established a title to the land lying on the easterly bank of the river at the place in question, so as to constitute them riparian proprietors, in which character alone they can maintain the claim, which they assert in this action. It is true that the title to the land on the easterly side of the river, is not claimed by the defendant ; stil. the demandants must recover by the strength of their own title and not by the weakness of the defendant's, and as the demandants aver. that they are seised of this land, and this averment is material to their title and is traversed and

Deerfield
*v.*
Arms.

put in issue by the defendant, it is a fact to be proved. As however no counter title is set up by the defendant, it is obvious that a *primâ facie* title will be sufficient.

[The Chief Justice here went into an examination of the evidence of the demandants' title to the land on the eastern side of the river at the place in question, drawing the conclusion that they were seised of the same. He then proceeded :—]

Considering that the town have established their title as riparian proprietors, to a certain portion of the alluvial formation in question, it only remains to inquire how it shall be divided. This is a curious, and in many aspects in which 't may be presented, would be a very difficult subject, as well as the analogous one of the division of flats, or land bounding on salt water, over which the tide ebbs and flows, among coterminous riparian proprietors, were it necessary to prescribe a general rule applicable to all supposable cases. But I do not think it necessary to discuss this subject at large, because the circumstances of the present case do not require it.

As neither of the riparian proprietors, can establish any claim superior to the other, it is manifest, that the newly acquired land must be divided equally between the parties, in proportion to the land which they respectively hold as riparian proprietors, and in virtue of which the law attributes to them this acquisition.

The facts of the present case show, and it appears by the plan, which is made part of the case, that the alluvion is formed in a bend of the river, extending along in front of the lands of several different owners.

The object is, to establish a rule of division among these proprietors, which will do justice to each, where no positive rule is prescribed, and where we have no direct judicial decisions to guide us. The case most analogous to the present, which has occurred in this Commonwealth, is that of the division of flats ground, among coterminous proprietors, conformably to the general principle laid down in the colony ordinance, giving to the proprietors of lands bounding on salt water, where the tide ebbs and flows, propriety to low-water mark, with some qualifications. *Rust* v. *Boston Mill*

*Corp.* 6 Pick. 158 ; *Emerson* v. *Taylor*, 9 Greenl. 44. In booth cases we think two objects are to be kept in view, in making such an equitable distribution ; one is, that the parties shall have an equal share in proportion to their lands, of the area of the newly formed land, regarding it as land useful for the purposes of cultivation or otherwise, in which the value will be in proportion to the quantity ; the other is, to secure to each an access to the water, and an equal share of the river line in proportion to his share on the original line of the water, regarding such water line in many situations as principally useful for forming landing-places, docks, quays and other accommodations with a view to the benefits of naviga-tion, and as such constituting an important ingredient in the value of the land.   Without attempting to establish a rule of general application, we think that the one which shall most nearly, in general, accomplisn these two conditions, will come nearest to doing justice.

A rule, which appears to us to be applicable to the present case and meets the required conditions, is found in a work of the civil law, cited by the learned counsel who opened the case for the demandants, entitled *A Collection of New Decisions*, by Denisart, published in France in 1783.   It is in the form of a dictionary, and this subject 'is discussed under the title, *Attérissement.*

The rule suggested in this work is founded upon the obvi-ous consideration already alluded to, that in many cases, lands which border upon navigable rivers, derive a great part of their actual value from that circumstance, and from the benefit of the public easement thereby annexed to such lands, and that, being wholly deprived of the benefit of that situation would operate as a great hardship and do real injustice to a riparian proprietor, although he should obtain his full propor-tion of the land measured by the surface.   This injustice will be avoided by the proposed rule, in conformity with which each proprietor will take a larger or smaller proportion of the allu-vial formation, and of the newly formed river or shore line, according to the extent of his original line on the shore of the river.

The rule is, 1. To measure the whole extent of the in-

cient bank or line of the river, and compute how many rods, yards or feet, each riparian proprietor owned on the river line 2. The next step is, supposing the former line, for instance, to amount to 200 rods, to divide the newly formed bank or river line into 200 equal parts, and appropriate to each proprietor as many portions of this new river line, as he owned rods on the old. Then, to complete the division, lines are to be drawn from the points at which the proprietors respectively bounded on the old, to the points thus determined as the points of division on the newly formed shore. The new lines, thus formed, it is obvious, will be either parallel, or divergent, or convergent, according as the new shore line of the river equals, or exceeds or falls short of the old.

This mode of distribution secures to each riparian proprietor the benefit of continuing to hold to the river shore, whatever changes may take place in the condition of the river by accretion, and the rule is obviously founded in that principle of equity, upon which the distribution ought to be made. It may require modification perhaps, under particular circumstances. For instance, in applying the rule to the ancient margin of the river, to ascertain the extent of each proprietor's title on that margin, the general line ought to be taken, and not the actual length of the line on that margin if it happens to be elongated by deep indentations or sharp projections. In such case, it should be reduced by an equitable and judicious estimate, to the general available line of the land upon the river. We are not aware that in the present case any such modification will be necessary, and therefore the general rule may be applied, and will do justice between the parties.